UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT GRIMM : | NO.: 3:03CV00725 (MRK) |
| v. : | |
| JOHN KRUPINSKY : | NOVEMBER 21, 2003 |

### LOCAL RULE 56(a)(1) STATEMENT

Pursuant to Fed. R. Civ. P. 56(c) and D. Conn. L. Civ. R. 56(a)(1), the defendant, JOHN KRUPINSKY, submits the following Statement of Material Facts Not In Dispute in support of his Motion for Summary Judgment and Memorandum of Law in support of his Motion for Summary Judgment dated
November 21, 2003.

1. At all relevant times, the plaintiff, Robert Grimm, was a resident of the Town of New Canaan, Connecticut. (Complaint, ¶3).

2. At all relevant times, the defendant, John Krupinsky, was and remains a police officer employed by the Town of Danbury. He is sued only in his individual capacity. (Complaint, ¶4).

3. The plaintiff alleges that the defendant Krupinsky subjected him to malicious prosecution and false arrest, in violation of the protections afforded by the Fourth Amendment to the United States Constitution, through Krupinsky's actions as a Danbury police officer that led to the plaintiff's arrest on various criminal charges.

(Complaint, ¶¶1, 10).

4. The defendant is a detective in the Danbury Police Department and he held this position at the time of the incidents alleged in the Complaint. (Affidavit of John Krupinsky, attached as **Exhibit A**).

5. Detective Krupinsky first became aware of Beverly Grimm and the plaintiff, Robert Grimm, on May 27, 1999. (**Exhibit A**).

6. On that date, Mrs. Grimm made a complaint to Detective Krupinsky about harassing conduct towards her by her then-husband, from whom she was currently separated and in the process of divorcing. (Complaint, ¶6; **Exhibit A**; Arrest Warrant Application dated July 21, 1999, copy attached as **Exhibit B**).

7. At all times relevant to the incidents alleged in the Complaint, the plaintiff was estranged from his wife, Beverly Grimm. (Complaint, ¶1).

8. Beverly Grimm was a defendant in the Connecticut Superior Court case captioned, <u>Robert L. Grimm v. Beverly L. Grimm</u>, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. CV-01-184596-S, in which she was sued for malicious prosecution by her husband Robert Grimm, stemming from Mr. Grimm's arrests by the Danbury Police Department in 1999. (Affidavit of Beverly Grimm, attached as **Exhibit C**).[1]

9. Beverly Grimm filed for a divorce from Robert Grimm on August 25, 1997. (**Exhibit C**).

10. When Mrs. Grimm contacted Detective Krupinsky she lived at 2 East Lake Road in Danbury, Connecticut, where she rented a house. (Deposition testimony of Detective Krupinsky, September 27, 2001, page 16, lines 11-23, excerpts attached as **Exhibit D**).[2]

11. Mrs. Grimm advised Detective Krupinsky that her husband consistently harassed her on the telephone and he continually dropped off unwanted items to her at her residence. (**Exhibits A, B & C**, ¶¶ 5-10).

12. Mrs. Grimm described the harassment as an ongoing problem dating back to March 1998. (**Exhibits A, B & C**).

13. Detective Krupinsky checked Danbury police records and found several complaint reports about Mr. Grimm from Mrs. Grimm dating back to March 1998. (**Exhibits A & B**).

---

[1] Beverly Grimm's affidavit was attached to her Motion for Summary Judgment in Robert L. Grimm v. Beverly L. Grimm, supra.

[2] Detective Krupinsky was deposed in Grimm v. Grimm, supra.

14. Mrs. Grimm advised Detective Krupinsky that on May 27, 1999 Robert Grimm came over to her residence and placed a package in the mailbox. (**Exhibits A, B & C**).

15. Mrs. Grimm's neighbor, Ms. Susan Raymond, observed Mr. Grimm place the package in the mailbox. (**Exhibits B & C**).

16. Ms. Raymond lived in an apartment located over the garage of Mrs. Grimm's rental house at 2 East Lake Road. (**Exhibit D**, pg. 16, lines 21-23).

17. Detective Krupinsky went to Beverly Grimm's residence on May 27, 1999 and spoke to both Mrs. Grimm and Susan Raymond, who confirmed Mrs. Grimm's claim that Mr. Grimm placed a package in the mailbox earlier that day. (**Exhibits A, B & C**).

18. At this time Mrs. Grimm informed Detective Krupinsky of her ongoing problems with Mr. Grimm, going back for a period of a year and a half. (**Exhibit C**, ¶17).

19. Mrs. Grimm told Detective Krupinsky that she wanted no contact of any type with her husband, Robert Grimm. (**Exhibits A, B & C**).

20. Detective Krupinsky thereafter attempted to contact Mr. Grimm to advise him not to have any contact with Mrs. Grimm, including, that he was not to enter the property where Mrs. Grimm resided, he was not to call her, leave items in her mailbox or wait for her near her residence or any other location. (Complaint, ¶7; **Exhibits A & B**).

21. Detective Krupinsky telephoned Mr. Grimm's residence and left messages

4

on his answering machine, however, Mr. Grimm never returned his calls.  (**Exhibits A & B**).

22.	Detective Krupinsky left two more messages thereafter, but never received a return call from Mr. Grimm.  (**Exhibits A & B**).		23.	Detective Krupinsky then contacted Mr. Grimm's attorney, and requested the attorney have Mr. Grimm contact him, however, Mr. Grimm never did contact Detective Krupinsky.  (**Exhibits A & B**).

24.	On June 4, 1999 Detective Krupinsky sent a registered letter to Mr. Grimm directing him not to have any contact with Mrs. Grimm.  (**Exhibits A & B;** Complaint ¶7).

25.	Post office records reflected that Mr. Grimm picked up this letter and signed for it on June 11, 1999.  (**Exhibits A & B**).

26.	On July 7, 1999 Mrs. Grimm again contacted Detective Krupinsky and told him that she had recently received more phone calls from Mr. Grimm as well as mail.  (**Exhibits A, B & C**, ¶19).

27.	Mrs. Grimm reported that on July 2, 1999 she received a message on her answering machine from Mr. Grimm inviting her to dinner.  (**Exhibits A & B**).

28.	On July 18 or 19, 1999 Detective Krupinsky was again contacted by Mrs. Grimm, who advised she had received four more telephone calls from her husband and that she had kept the answering machine tape as evidence of the phone calls.  (**Exhibits A, B & C**, ¶¶18-19).

29.	Detective Krupinsky filed an arrest warrant application for Robert Grimm

on July 21, 1999.  (**Exhibits A & B**).

30. Detective Krupinsky believed that the above-related facts and events provided probable cause that the plaintiff, Robert Grimm, violated one or more of the Connecticut General Statutes.  (**Exhibits A & B**).              31. The arrest warrant application was reviewed, approved and signed by one of Detective Krupinsky's supervisors, Detective Sergeant Colgan.  (**Exhibits A & B**).

32. State's Attorney Warren Murray signed and approved the application on July 29, 1999, and determined that probable cause existed on the charge of harassment in the second degree, in violation of C.G.S. § 53a-183(a)(2).  (**Exhibits A & B**).

33. The arrest warrant application was submitted to Superior Court Judge Dennis Eveleigh for review.  Judge Eveleigh signed the warrant on July 29, 1999, authorizing the arrest of Robert Grimm.  (**Exhibits A & B**).

34. Detective Krupinsky applied for a second arrest warrant for Mr. Grimm on August 2, 1999.  (**Exhibit A**; Arrest Warrant Application dated August 2, 1999 copy attached as **Exhibit E**).

35. The second warrant was based on a telephone call Detective Krupinsky received from Susan Raymond on July 29, 1999.  (**Exhibits A & E**).

36. In this phone call Susan Raymond reported that Mr. Grimm was currently parked in the driveway of

Mrs. Grimm's house; that he exited his vehicle and entered Mrs. Grimm's vehicle; and that he searched through the vehicle's passenger compartment and glove compartment. (**Exhibits A & E**).

37.     Ms. Raymond reported she saw Mr. Grimm open the trunk of Mrs. Grimm's vehicle, and then return to his own vehicle and drive away. (**Exhibits A & E**).

38.     Detective Krupinsky had advised Mr. Grimm previously he was not to enter the property of Mrs. Grimm's residence. (**Exhibits A, B & E**).

39.     Detective Krupinsky believed that this conduct by Mr. Grimm violated the instructions and warnings he had previously provided to Mr. Grimm. (**Exhibit A**).

40.     Furthermore, Detective Krupinsky believed that this latest action by Mr. Grimm also violated one or more Connecticut General Statutes. (**Exhibits A & E**).

41.     Detective Krupinsky submitted a second arrest warrant application for Mr. Grimm, which was approved by another supervisor, Detective Lieutenant Mack, and was approved and signed by State's Attorney Murray on August 13, 1999, finding that probable cause existed for the charge of criminal trespass. (**Exhibits A & E**).

42.     Judge Eveleigh signed the second arrest warrant for Mr. Grimm on August 18, 1999. (**Exhibits A & E**).

43.     Following the execution of the first arrest warrant, the plaintiff was arrested

on August 2, 1999 and charged with harassment in the second degree.  (**Exhibit A**; Complaint, ¶10).

44.   When Mr. Grimm was searched, a piece of paper was located on his person which stated "Marriage Contract – till we are parted by death."  (**Exhibit A**).

45.   After execution of the second arrest warrant the plaintiff was arrested on the additional charge of criminal trespass.  (Complaint, ¶12).

46.   All the criminal charges against the plaintiff stemming from these two arrests were nolled on September 11, 2000.  (Complaint, ¶14).

47.   The State's Attorney's office decided to nolle the criminal charges against Mr. Grimm in order to allow the pending divorce action between Mr. and Mrs. Grimm to proceed in an expedited fashion.  (Affidavit of Assistant State's Attorney Anthony Bochicchio, copy attached as **Exhibit F**).[3]

48.   The decision to nolle the charges was made in part because the State's Attorney handling the criminal case against Mr. Grimm was under the impression that if the charges were nolled, the Grimm's divorce would proceed right away.  (**Exhibit F**).

DEFENDANT,
JOHN KRUPINSKY

---

[3] Attorney Bochicchio's affidavit was an exhibit to Mrs. Grimm's Motion for Summary Judgment in <u>Grimm v. Grimm</u>.

           By /s/ Thomas R. Gerarde
            Thomas R. Gerarde
            ct05640
            Howd & Ludorf
            65 Wethersfield Avenue
            Hartford, CT  06114
            (860) 249-1361
            (860)249-7665 (Fax)
            E-Mail:  tgerarde@hl-law.com

## **CERTIFICATION**

   This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 21st day of November, 2003.


Norman A. Pattis, Esquire
Williams and Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT  06810


            /s/ Thomas R. Gerarde
           Thomas R. Gerarde

9